UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**AMY DIXON**
Plaintiff

v.

CA 07 254 S
C.A. NO. ____________

**UTGR, INC.; BLB MANAGEMENT SERVICES, INC.; LINCOLN PARK; TWIN RIVER; CLYDE CALLICOT; & GARY GREEN,**

Defendants

**VERIFIED COMPLAINT**

INTRODUCTORY STATEMENT/NATURE OF THE ACTION

This action is commenced by **AMY DIXON** (hereinafter "Plaintiff" or "DIXON") against **UTGR, INC.; BLB MANAGEMENT SERVICES, INC.; LINCOLN PARK; TWIN RIVER; CLYDE CALLICOT; AND GARY GREEN,** (hereinafter "Defendants" or "Employer") in order to remedy and seek relief for sexual harassment and discrimination based on gender, and retaliation in regard to terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.; the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws 28-5-1 et seq. ("RIFEPA"), and the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws 42-112-1 et seq. ("RICRA"), including certain common law claims.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 2201, and 2202; 42 U.S.C.S. §§2000e-1 et seq.; R.I.G.L. 42-112-2; R.I.G.L. 28-5-24.1.

2. Considerations of judicial economy, convenience, and fairness to the litigants warrant exercise of this court's supplemental jurisdiction with respect to Plaintiff's federal law claims. Plaintiff's state claims are so related to Plaintiff's federal claims that they form part of the same case or controversy. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367(a).

3. Pursuant to 28 U.S.C. 1391(b) and (c) and 42 U.S.C. 2000e-5(f)(3), venue is proper in this district because:

a. The alleged unlawful practices occurred and/or are continuing to occur within the State of Rhode Island, and in this judicial district;

b. all records relevant to the alleged unlawful practices are maintained and administered in the Defendants' executive offices and place of business: UTGR, Inc. located at 100 Twin River Rd., Lincoln, Rhode Island 02865.

c. the Plaintiff would currently be enjoying all rights, benefits, and privileges of her employment, as a full-time employee of Defendant UTGR, Inc. at a

Rhode Island facility of Defendant UTGR, Inc., but for the Defendants' unlawful practices.

4. On or about December 14, 2006, Dixon filed a formal Charge of Discrimination with the Rhode Island Commission for Human Rights ("RICHR") and the U.S. Equal Employment Commission ("EEOC"), alleging that she had been subjected to acts of sexual harassment and had been discriminated against on the basis of her gender—RICHR #07ESE140; EEOC #16J-2007-00098.

5. The RIHRC and the EEOC subsequently issued Notice of Right To Sue. (Attachment A&B.)

6. Plaintiff has filed this action within ninety (90) days of her receipt of federal and state Right To Sue notifications, and has fulfilled all conditions precedent to the institution of this action under federal and/or state law.

**THE PARTIES**

7. The Plaintiff, Amy Dixon ("Dixon" or "Plaintiff"), an individual, is a resident of the town of Johnston, Rhode Island.

8. Plaintiff Dixon is a "person" within the meaning of R.I.G.L. §§28-5-6 (1) and R.I.G.L. 42-112-1, et seq.; is an employee within the meaning of 42 U.S.C.S.

2000e(f) and R.I.G.L. 28-5-6 (C); and is an "individual" within the meaning of 42 U.S.C. 2000e-2(a).

9. On information and belief, the Defendant, UTGR, Inc. ("Defendant" or "the Employer"), is a domestic corporation with an executive office in Lincoln, Rhode Island, and is in the operation of the track-based gaming business, video lottery terminals, entertainment, food and beverage. Defendant UTGR, Inc. owned and operated, Defendant Lincoln Park, located at 1600 Louisquisset Pike, Lincoln, RI 02865. Upon information and belief, Defendant BLB Management Services Inc. is the parent company of UTGR, Inc. and in the business of food entertainment and gaming. BLB Management Services, Inc. has a principal office located at 100 Twin River Road, Lincoln, RI 02865. Defendant Lincoln Park was Plaintiff's Employer, during the incidents cited in this Complaint. Defendant UTGR, Inc. also owns and operates Defendant Twin River, the successor to Defendant Lincoln Park, currently located at 100 Twin River Road, Lincoln, RI 02865. Defendant Clyde Callicot is an individual and an employee of the above-referenced Defendants, in the position of Vice President of Marketing, and a resident of Lincoln, Rhode Island. Defendant Gary Green is an individual and an employee of the above-referenced Defendants, in the position of Vice President of Human Resources, and a resident of Cumberland, Rhode Island.

10. Defendants UTGR, Inc. and BLB Management Services, Inc. own, operate, and maintain a principal place of business at 100 Twin River Road, Lincoln, Rhode Island.

11. At all times material to the allegations of this Complaint, Defendant UTGR, Inc.; Defendant BLB Management Services, Inc.; Defendant Lincoln Park; and Defendant Twin River, have continuously, and does now, employ at least 100 or more employees in the State of Rhode Island.

12. At all times material to the allegations of this Complaint, the Defendant UTGR, Inc.; Defendant BLB Management Inc.; Defendant Lincoln Park; and Defendant Twin River, have continuously been engaged in an industry affecting commerce within the meaning of pertinent federal statutes.

13. At all times material to the allegations of this Complaint, the Defendants was and are an "Employer" or otherwise come within the provisions of federal and state statutes pertinent to this action, including the RIFEPA, Title VII, the Rhode Island Civil Rights Act, and any other pertinent statutes.

14. Dixon is an "individual" within the meaning of pertinent provisions defining that term under pertinent federal and state statutes and as that term in applicable to pertinent provisions of Title VII.

15. At all times material to this action, the Defendants were an Employer or were otherwise subject to the provisions of R.I.G.L. § 42-112-1 et seq. (The Rhode Island Civil Rights Act of 1990) and R.I.G.L. § 28-5-1- et seq. (The Rhode Island Fair

Employment Practices Act). At all times material to this action, Plaintiff was protected under the terms of R.I.G.L. § 42-112-1 et seq. and R.I.G.L. § 28-5-1 et seq.

## FACTS APPLICABLE TO EACH COUNT

16. Dixon is a female.

17. Dixon worked for the Defendants, under the supervision of Defendant Green and Callicot.

18. Dixon began her tenure of employment with the Defendants on or about August 2, 1997.

19. At all times, Dixon performed her duties in a satisfactory manner, meeting or exceeding the Employer's legitimate expectations.

20. By 2006, Dixon had risen to the position of Director of Events.

21. On or about February 28, 2006, Dixon was demoted to the position of Catering Administrative Assistant, essentially a secretarial position, losing her previous department, duties, staff, and other indicia of a management position.

22. This decision was initiated Defendant Callicot and executed by Defendant Green.

23. Upon information and belief, the position of the Director of Events had been merged into the promotions department and Dixon's duties are now being performed by her former male assistant, under the title Assistant Director of Events.

24. Dixon's former assistant currently reports to the male who now holds the position of Director of Promotions and Events, also one of Dixon's former assistants.

25. Neither of the males referenced in Paragraphs 23-24 above have Dixon's skill, level of experience or years of service to the company.

26. Dixon hired both of the above-referenced males in paragraphs 23-25.

27. When Dixon asked why she was not permitted to "bid" or stay in either of these positions, the Employers' general manager simply said that he did not know and provided Dixon with no explanation.

28. Prior to Dixon's demotion, she complained on numerous occasions about what she reasonably viewed as a work environment, abusive and hostile towards women, and conduct of a sexually hostile nature which permeated the workplace.

29. For example, and not by way of a complete list, the following conduct occurred:

a. Plaintiff was told by Defendant Callicot that she was negative and that he would "blow [her] ass out of the water.";

b. Defendant Callicot questioned Plaintiff's attitude and emotional state when she returned to work following thyroid surgery and said that he understood because he [had] a pregnant wife at home.";

c. Defendant Callicot threatened to have Plaintiff "reevaluated" when she tried to talk to him about employee work concerns;

d. Defendant Callicot told Plaintiff "not to think," and stated to other female employees that if the work environment was difficult, there could be "no tears…because [he] knew how [women] could be.";

e. Defendant Callicot stated to the former Director of Marketing, "things will be much better when I get my number two guy in place," to which she responded "You mean number two person?", and he stated "Whatever."

f. Certain male personnel, including but not limited to Defendant Gary Green, repeatedly accessed a web site, while at work, on which Plaintiff appeared as a model;

g. Plaintiff was informed by the Employer that she would be required to travel out of state, overnight, with Defendant Callicot. Plaintiff objected because she had been informed that Defendant Callicot had previously commented to Plaintiff's General Manager that Plaintiff "had a tight little body.";

h. Plaintiff was referred to by certain company authority as "one of the hot girls.";

i. Plaintiff was called into the on-site counseling office, with other management personnel present, and asked to play a game. Plaintiff was told this was a "Howard Stern game," at which point Plaintiff was asked a series of questions---"...who would you kill...who would you date...who would you fuck.";

j. Immediately after Plaintiff complained about certain working conditions, Defendant Callicot stated to the Director of Human Resources that and the Employer's General Manager that he "wished [Plaintiff] was a guy so [he] could take [Plaintiff] outside and beat the shit out of [her] once and for all." Defendant Callicot also stated "if that fucking whore thinks she can bring me down she's got another thing coming.";

k. Plaintiff was informed by the Director of Human Resources that Defendant Gary Green and the Director of Gaming, also a male, called Plaintiff a "crazy bitch" to a company representative;

l. On other occasions comments were made by certain management personnel that they had no use for women managers and other demeaning comments.

30. This misconduct was well known to company authorities and supervisors including but not limited to Defendant Callicot and Defendant Green.

31. Plaintiff followed all appropriate steps, as she understood company policy, in reporting misconduct, but no remedial action was ever taken.

32. Such conduct occurred on a repeated and consistent basis.

33. Plaintiff consistently objected to such misconduct and made it clear that she did not welcome or condone such behavior and that she found such conduct offensive.

34. Plaintiff did not participate in the conduct referenced in paragraph 29, above, did not invite it, and was deeply offended by it.

35. On September 6, 2006, in light of the retaliation and mistreatment to which Plaintiff was subjected, which no reasonable person could have been expected to continue to endure, Plaintiff was compelled to take a medical leave of absence.

36. Plaintiff was terminated on December 11, 2006.

37. The Defendants have intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in violation of state and federal law intended to prevent employment discrimination based on gender, and have retaliated against the Plaintiff for reporting what she reasonably perceived to be misconduct in the workplace.

38. The Defendants' conduct reflects, in both purpose and effect, a blatant, willful, and/or malicious pattern of discrimination and unlawful treatment against the Plaintiff. Such conduct has involved an intentional, reckless, and/or callous indifference to the statutorily protected rights of the Plaintiff. The Defendants knowingly and

purposefully subjected the Plaintiff to humiliating discriminatory and unlawful treatment as a result of her gender.

39. On information and belief, and at all times pertinent to this Complaint, managers and supervisors engaging in discriminatory workplace treatment of the Plaintiff, were each a person acting in furtherance of the interest of, on behalf of, and as the agent of Defendants, with respect to the allegations of this Complaint, and the Defendants knew or should reasonably have known of their unlawful conduct.

40. The wrongful actions by Defendants that Dixon complained of herein were taken without justification, excuse, or defense, but rather were taken in a purposefully discriminatory and unlawful manner, and have caused the Plaintiff lost employment, lost wages, lost benefits, humiliation, embarrassment, emotional and physical harm, and other damages.

**COUNT I**
**AS TO ALL DEFENDANTS**
**DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT**
**HOSTILE ENVIRONMENT**
**TERMINATION**
**AND RETALIATION BASED ON GENDER**
**RHODE ISLAND CIVIL RIGHTS ACT OF 1990**
**R.I.G.L. 42-112-1 ET SEQ.**

41. Paragraphs 1-40, above, are herein incorporated by reference in their entirety.

42. By its conduct, Defendants have discriminated against Plaintiff on the basis of her sex, in the terms and conditions of her employment, in violation of the Rhode Island Civil Rights Act of 1990, R.I.G.L. 42-112-1 et seq., by:

a. interfering with her right to avail herself of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on gender;

b. depriving her of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which she was entitled;

c. treating her in a hostile manner, and forcing her to work in a hostile, demeaning, and sexually-threatening environment based on her sex; and

d. causing her lost income and benefits, humiliation, physical and emotional injury, as well as irreparable harm to her reputation and professional mobility.

43. As the direct, foreseeable, and intended result of Defendants' unlawful discrimination, Dixon has suffered lost wages, benefits, irreparable harm to her good and valuable personal and professional reputation, as well as other damages, now and in the future, including severe and extreme emotional distress, with resulting physical and emotional manifestations.

44. The unlawful practices engaged in by the Defendants were motivated by

impermissible and unlawful considerations concerning Dixon's gender. Such practices include, but are not limited to, Defendants':

a.) subjecting Dixon to discriminatory terms and conditions of employment because of her gender, and creating and tolerating a hostile work environment;

b.) retaliating against Dixon for asserting his rights to be free from discrimination based on gender;

c.) terminating Dixon.

45. But for the Defendants' intent to discriminate against Plaintiff because of her gender, Defendants would not have subjected her to discriminatory terms and conditions of employment, created and tolerated a hostile work environment, retaliated against her, or terminated her.

46. The Defendants purposefully, maliciously, and without justification or excuse, took discriminatory action with respect to Plaintiff's employment because of Plaintiff's gender. The Defendants' conduct has unlawfully denied Plaintiff of income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which she was entitled; has caused harm to her reputation; and has caused her humiliation, as well as physical and/or emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

**COUNT II**
**AS TO ALL DEFENDANTS**
**DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT**
**HOSTILE ENVIRONMENT**
**UNLAWFUL TERMINATION**
**AND RETALIATION BASED ON GENDER**

**RHODE ISLAND FAIR EMPLOYMENT PRACTICES ACT**
**R.I.G.L. § 28-5-1 et seq.**

47. Paragraphs 1-40 above are herein incorporated by reference in their entirety.

48. Defendants willfully engaged in a policy or practice of discriminating against Plaintiff in violation of the RIFEPA.

49. The Defendants' discriminatory conduct, policies, and practices are violative of the provisions of the RIFEPA by:

a.) interfering with Plaintiff's right to avail herself of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on gender;

b.) depriving her of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which she was entitled;

c.) treating her in a hostile, demeaning, and otherwise unlawful manner based on her gender;

d.) causing her lost income and benefits, humiliation, physical and emotional injury, as well as irreparable harm to her personal and professional reputation.

50. The unlawful practices engaged in by the Defendants were motivated by impermissible and unlawful considerations concerning Dixon's gender. Such practices include, but are not limited to, Defendants':

a.) subjecting Plaintiff to discriminatory terms and conditions of employment;

b.) creating and/or tolerating a work environment hostile towards Plaintiff on the basis of her gender;

c.) retaliating against Plaintiff for asserting her rights to be free from discrimination based on gender; and

d.) terminating Plaintiff.

51. But for the Defendants' intent to discriminate against Plaintiff because of her gender, Defendants would not have subjected her to discriminatory terms and conditions of employment, forced her to work in a sexually hostile environment, or retaliated against her by terminating her for attempting to assert her right to be free from workplace conduct made unlawful by the RIFEPA.

52. The Defendants' conduct has unlawfully deprived Plaintiff of income, benefits, privileges, promotions, and other terms and conditions accruing to the

employment relationship to which she was entitled; has caused irreparable harm to her reputation and professional mobility; and has cause her extreme humiliation, as well as physical and emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

**COUNT III**
**AS TO ALL DEFENDANTS**
**DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT**
**HOSTILE ENVIRONMENT**
**UNLAWFUL TERMINATION**
**AND RETALIATION BASED ON GENDER**

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. §2000, ET SEQ.**

53. Paragraphs 1-40 above are herein incorporated by reference in their entirety.

54. Defendants willfully engaged in a policy or practice of discriminating against Plaintiff in violation of Title VII.

55. The Defendants' discriminatory conduct, policies, and practices are violative of the provisions of Title VII, by:

e.) interfering with Plaintiff's right to avail herself of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on gender;

f.) depriving her of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which she was entitled;

g.) treating her in a hostile, demeaning, and otherwise unlawful manner based on her gender;

h.) causing her lost income and benefits, humiliation, physical and emotional injury, as well as irreparable harm to her person and professional reputation.

56. The unlawful practices engaged in by the Defendants were motivated by impermissible and unlawful considerations concerning Dixon's gender. Such practices include, but are not limited to, Defendants':

a.) subjecting Plaintiff to discriminatory terms and conditions of employment;

b.) creating and/or tolerating a work environment hostile towards Plaintiff on the basis of her gender;

c.) retaliating against Plaintiff for asserting her rights to be free from discrimination based on gender; and

d.) terminating Plaintiff.

57. But for the Defendants' intent to discriminate against Plaintiff because of her gender, Defendants would not have subjected her to discriminatory terms and conditions of employment, forced her to work in a sexually hostile environment, or

retaliated against her by terminating her for attempting to assert her right to be free from workplace conduct made unlawful by Title VII.

58. The Defendants' conduct has unlawfully deprived Plaintiff of income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which she was entitled; has caused irreparable harm to her reputation and professional mobility; and has cause her extreme humiliation, as well as physical and emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, and in favor of Plaintiff for all damages and equitable relief available, including, but not limited to:

a.) an order that the Defendants institute and carry out practices, policies and programs which provide equal employment opportunities to qualified individuals, regardless of gender;

b.) an order that the Defendants make whole the Plaintiff with appropriate promotional opportunities, lost earnings, back-pay, front-pay, the value of lost benefits,

and interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

c.) an order that the Defendants make whole the Plaintiff by providing for any additional pecuniary losses and compensation for the damage done to her valuable reputation, in amounts to be determined at trial;

d.) an order that the Defendants make whole the Plaintiff by providing compensation for non-pecuniary losses, including but not limited to emotional pain, suffering, humiliation, and mental anguish in amounts to be proven at trial, including an appropriate award of compensatory damages pursuant to R.I.G.L. § 28-50-4, 42-112-2, and 28-5-24;

e.) grant attorney's fees and the costs of this action;

f.) grant punitive or exemplary damages, as appropriate to punish the Defendants for its malicious conduct and/or for its reckless and/or callous indifference to the statutorily protected rights of the Plaintiff, including an appropriate award pursuant to R.I.G.L. § 28-50-4, 42-112-2, and 28-5-1;

g.) grant an appropriate award of prejudgment interest, including an award of interest for all damages awarded to the Plaintiff from the date this cause of action accrued, pursuant to R.I.G.L.§ 9-21-10;

h.) grant such further relief as this court deems necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands trial by jury of all issues pertinent to the causes in this Complaint triable as of right by jury.

**VERIFICATION**

I hereby attest that the information contained above is true and correct to the best of my knowledge and recollection.

Amy T. Dixon ( Signature) 6/29/07 (Date)

Signed Before me on this 29th date of June 2007.

Eric Fanning Notary Public (My Commission Expires 8/13/07)

Respectfully Submitted,
Amy Dixon
By Her Attorney,

Stephen T. Fanning #3900
305 South Main Street
Providence, RI 02903
401-272-8250
401-272-4520 (FAX)