UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**AMY DIXON**
Plaintiff

v. C.A. NO. 07-254 S

**UTGR, INC. d/b/a TWIN RIVER formerly known as LINCOLN PARK; CLYDE CALLICOT; & GARY GREEN**

Defendants

**AMENDED COMPLAINT**

INTRODUCTORY STATEMENT/NATURE OF THE ACTION

This action is commenced by **AMY DIXON** (hereinafter "Plaintiff" or "DIXON") against **UTGR, INC. d/b/a TWIN RIVER formerly known as LINCOLN PARK; CLYDE CALLICOT; AND GARY GREEN**, (hereinafter "Defendants" or "Employer") in order to remedy and seek relief for sexual harassment and discrimination based on gender, and retaliation in regard to terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.; the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws 28-5-1 et seq. ("RIFEPA"), and the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws 42-112-1 et seq. ("RICRA"), including certain common law claims.

engaged in an industry affecting commerce within the meaning of pertinent federal statutes.

13. At all times material to the allegations of this Complaint, the Defendants was and are an "Employer" or otherwise come within the provisions of federal and state statutes pertinent to this action, including the RIFEPA, Title VII, the Rhode Island Civil Rights Act, and any other pertinent statutes.

14. Dixon is an "individual" within the meaning of pertinent provisions defining that term under pertinent federal and state statutes and as that term in applicable to pertinent provisions of Title VII.

15. At all times material to this action, the Defendants were an Employer or were otherwise subject to the provisions of R.I.G.L. § 42-112-1 et seq. (The Rhode Island Civil Rights Act of 1990) and R.I.G.L. § 28-5-1- et seq. (The Rhode Island Fair Employment Practices Act). At all times material to this action, Plaintiff was protected under the terms of R.I.G.L. § 42-112-1 et seq. and R.I.G.L. § 28-5-1 et seq.

**FACTS APPLICABLE TO EACH COUNT**

16. Dixon is a female.

17. Dixon worked for the Defendants, under the supervision of Defendants Green and Callicot.

18. Dixon began her tenure of employment with the Defendants on or about August 2, 1997.

19. At all times, Dixon performed her duties in a satisfactory manner, meeting or exceeding the Employer's legitimate expectations.

20. By 2006, Dixon had risen to the position of Director of Events.

21. On or about February 28, 2006, Dixon was demoted to the position of Catering Administrative Assistant, essentially a secretarial position, losing her previous department, duties, staff, and other indicia of a management position.

22. This decision was initiated by Defendant Callicot and executed by Defendant Green.

23. Upon information and belief, the position of the Director of Events had been merged into the promotions department and Dixon's duties are now being performed by her former male assistant, under the title Assistant Director of Events.

24. Dixon's former assistant currently reports to the male who now holds the position of Director of Promotions and Events, also one of Dixon's former assistants.

25. Neither of the males referenced in Paragraphs 23-24 above have Dixon's skill, level of experience or years of service to the company.

26. Dixon hired both of the above-referenced males in paragraphs 23-25.

27. When Dixon asked why she was not permitted to "bid" or stay in either of these positions, the Employers' general manager simply said that he did not know and provided Dixon with no explanation.

28. Prior to Dixon's demotion, she complained on numerous occasions about what she reasonably viewed as a work environment, abusive and hostile towards women, and conduct of a sexually hostile nature which permeated the workplace.

29. For example, and not by way of a complete list, the following conduct occurred:

a. Plaintiff was told by Defendant Callicot that she was negative and that he would "blow [her] ass out of the water.";

b. Defendant Callicot questioned Plaintiff's attitude and emotional state when she returned to work following thyroid surgery and said that he understood because he [had] a pregnant wife at home.";

c. Defendant Callicot threatened to have Plaintiff "reevaluated" when she tried to talk to him about employee work concerns;

d. Defendant Callicot told Plaintiff "not to think," and stated to other female employees that if the work environment was difficult, there could be "no tears…because [he] knew how [women] could be.";

e. Defendant Callicot stated to the former Director of Marketing, "things will be much better when I get my number two guy in place," to which she responded "You mean number two person?", and he stated "Whatever."

f. Certain male personnel, including but not limited to Defendant Gary Green, repeatedly accessed a web site, while at work, on which Plaintiff appeared as a model;

g. Plaintiff was informed by the Employer that she would be required to travel out of state, overnight, with Defendant Callicot. Plaintiff objected because she had been informed that Defendant Callicot had previously commented to Plaintiff's General Manager that Plaintiff "had a tight little body.";

h. Plaintiff was referred to by certain company authority as "one of the hot girls.";

i. Plaintiff was called into the on-site counseling office, with other management personnel present, and asked to play a game. Plaintiff was told this was a "Howard Stern game," at which point Plaintiff was asked a series of questions---"…who would you kill…who would you date…who would you fuck.";

j. Immediately after Plaintiff complained about certain working conditions, Defendant Callicot stated to the Director of Human Resources that and the Employer's General Manager that he "wished [Plaintiff] was a guy so [he] could take [Plaintiff]

outside and beat the shit out of [her] once and for all." Defendant Callicot also stated "if that fucking whore thinks she can bring me down she's got another thing coming.";

k. Plaintiff was informed by the Director of Human Resources that Defendant Gary Green and the Director of Gaming, also a male, called Plaintiff a "crazy bitch" to a company representative;

l. On other occasions comments were made by certain management personnel that they had no use for women managers and other demeaning comments.

30. This misconduct was well known to company authorities and supervisors including but not limited to Defendant Callicot and Defendant Green.

31. Plaintiff followed all appropriate steps, as she understood company policy, in reporting misconduct, but no remedial action was ever taken.

32. Such conduct occurred on a repeated and consistent basis.

33. Plaintiff consistently objected to such misconduct and made it clear that she did not welcome or condone such behavior and that she found such conduct offensive.

34. Plaintiff did not participate in the conduct referenced in paragraph 29, above, did not invite it, and was deeply offended by it.

35. On September 6, 2006, in light of the retaliation and mistreatment to which Plaintiff was subjected, which no reasonable person could have been expected to continue to endure, Plaintiff was compelled to take a medical leave of absence.

36. Plaintiff was terminated on December 11, 2006.

37. The Defendants have intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in violation of state and federal law intended to prevent employment discrimination based on gender, and have retaliated against the Plaintiff for reporting what she reasonably perceived to be misconduct in the workplace.

38. The Defendants' conduct reflects, in both purpose and effect, a blatant, willful, and/or malicious pattern of discrimination and unlawful treatment against the Plaintiff. Such conduct has involved an intentional, reckless, and/or callous indifference to the statutorily protected rights of the Plaintiff. The Defendants knowingly and purposefully subjected the Plaintiff to humiliating discriminatory and unlawful treatment as a result of her gender.

39. On information and belief, and at all times pertinent to this Complaint, managers and supervisors engaging in discriminatory workplace treatment of the Plaintiff, were each a person acting in furtherance of the interest of, on behalf of, and as the agent of

Defendants, with respect to the allegations of this Complaint, and the Defendants knew or should reasonably have known of their unlawful conduct.

40. The wrongful actions by Defendants that Dixon complained of herein were taken without justification, excuse, or defense, but rather were taken in a purposefully discriminatory and unlawful manner, and have caused the Plaintiff lost employment, lost wages, lost benefits, humiliation, embarrassment, emotional and physical harm, and other damages.

**COUNT I**
**AS TO ALL DEFENDANTS**
**DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT**
**HOSTILE ENVIRONMENT**
**TERMINATION**
**AND RETALIATION BASED ON GENDER**
**RHODE ISLAND CIVIL RIGHTS ACT OF 1990**
**R.I.G.L. 42-112-1 ET SEQ.**

41. Paragraphs 1-40, above, are herein incorporated by reference in their entirety.

42. By its conduct, Defendants have discriminated against Plaintiff on the basis of her sex, in the terms and conditions of her employment, in violation of the Rhode Island Civil Rights Act of 1990, R.I.G.L. 42-112-1 et seq., by:

a. interfering with her right to avail herself of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on gender;

b. depriving her of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which she was entitled;

c. treating her in a hostile manner, and forcing her to work in a hostile, demeaning, and sexually-threatening environment based on her sex; and

d. causing her lost income and benefits, humiliation, physical and emotional injury, as well as irreparable harm to her reputation and professional mobility.

43. As the direct, foreseeable, and intended result of Defendants' unlawful discrimination, Dixon has suffered lost wages, benefits, irreparable harm to her good and valuable personal and professional reputation, as well as other damages, now and in the future, including severe and extreme emotional distress, with resulting physical and emotional manifestations.

44. The unlawful practices engaged in by the Defendants were motivated by impermissible and unlawful considerations concerning Dixon's gender. Such practices include, but are not limited to, Defendants':

a.) subjecting Dixon to discriminatory terms and conditions of employment because of her gender, and creating and tolerating a hostile work environment;

b.) retaliating against Dixon for asserting his rights to be free from discrimination based on gender;

c.) terminating Dixon.

45. But for the Defendants' intent to discriminate against Plaintiff because of her gender, Defendants would not have subjected her to discriminatory terms and conditions of employment, created and tolerated a hostile work environment, retaliated against her, or terminated her.

46. The Defendants purposefully, maliciously, and without justification or excuse, took discriminatory action with respect to Plaintiff's employment because of Plaintiff's gender. The Defendants' conduct has unlawfully denied Plaintiff of income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which she was entitled; has caused harm to her reputation; and has caused her humiliation, as well as physical and/or emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

**COUNT II**
**AS TO ALL DEFENDANTS**
**DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT**
**HOSTILE ENVIRONMENT**
**UNLAWFUL TERMINATION**
**AND RETALIATION BASED ON GENDER**

**RHODE ISLAND FAIR EMPLOYMENT PRACTICES ACT**
**R.I.G.L. § 28-5-1 et seq.**

47. Paragraphs 1-40 above are herein incorporated by reference in their entirety.

48. Defendants willfully engaged in a policy or practice of discriminating against Plaintiff in violation of the RIFEPA.

49. The Defendants' discriminatory conduct, policies, and practices are violative of the provisions of the RIFEPA by:

a.) interfering with Plaintiff's right to avail herself of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on gender;

b.) depriving her of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which she was entitled;

c.) treating her in a hostile, demeaning, and otherwise unlawful manner based on her gender;

d.) causing her lost income and benefits, humiliation, physical and emotional injury, as well as irreparable harm to her personal and professional reputation.

50. The unlawful practices engaged in by the Defendants were motivated by impermissible and unlawful considerations concerning Dixon's gender. Such practices include, but are not limited to, Defendants':

a.) subjecting Plaintiff to discriminatory terms and conditions of employment;

b.) creating and/or tolerating a work environment hostile towards Plaintiff on the basis of her gender;

c.) retaliating against Plaintiff for asserting her rights to be free from discrimination based on gender; and

d.) terminating Plaintiff.

51. But for the Defendants' intent to discriminate against Plaintiff because of her gender, Defendants would not have subjected her to discriminatory terms and conditions of employment, forced her to work in a sexually hostile environment, or retaliated against her by terminating her for attempting to assert her right to be free from workplace conduct made unlawful by the RIFEPA.

52. The Defendants' conduct has unlawfully deprived Plaintiff of income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which she was entitled; has caused irreparable harm to her reputation and professional mobility; and has cause her extreme humiliation, as well as physical and emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

**COUNT III**
**AS TO ALL DEFENDANTS**
**DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT**
**HOSTILE ENVIRONMENT**
**UNLAWFUL TERMINATION**
**AND RETALIATION BASED ON GENDER**

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. §2000, ET SEQ.**

53. Paragraphs 1-40 above are herein incorporated by reference in their entirety.

54. Defendants willfully engaged in a policy or practice of discriminating against Plaintiff in violation of Title VII.

55. The Defendants' discriminatory conduct, policies, and practices are violative of the provisions of Title VII, by:

e.) interfering with Plaintiff's right to avail herself of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on gender;

f.) depriving her of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which she was entitled;

g.) treating her in a hostile, demeaning, and otherwise unlawful manner based on her gender;

h.) causing her lost income and benefits, humiliation, physical and emotional injury, as well as irreparable harm to her person and professional reputation.

56. The unlawful practices engaged in by the Defendants were motivated by impermissible and unlawful considerations concerning Dixon's gender. Such practices include, but are not limited to, Defendants':

a.) subjecting Plaintiff to discriminatory terms and conditions of employment;

b.) creating and/or tolerating a work environment hostile towards Plaintiff on the basis of her gender;

c.) retaliating against Plaintiff for asserting her rights to be free from discrimination based on gender; and

d.) terminating Plaintiff.

57. But for the Defendants' intent to discriminate against Plaintiff because of her gender, Defendants would not have subjected her to discriminatory terms and conditions of employment, forced her to work in a sexually hostile environment, or retaliated against her by terminating her for attempting to assert her right to be free from workplace conduct made unlawful by Title VII.

58. The Defendants' conduct has unlawfully deprived Plaintiff of income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which she was entitled; has caused irreparable harm to her reputation and professional mobility; and has cause her extreme humiliation, as well as physical and emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, and in favor of Plaintiff for all damages and equitable relief available, including, but not limited to:

a.) an order that the Defendants institute and carry out practices, policies and programs which provide equal employment opportunities to qualified individuals, regardless of gender;

b.) an order that the Defendants make whole the Plaintiff with appropriate promotional opportunities, lost earnings, back-pay, front-pay, the value of lost benefits, and interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

c.) an order that the Defendants make whole the Plaintiff by providing for any additional pecuniary losses and compensation for the damage done to her valuable reputation, in amounts to be determined at trial;

d.) an order that the Defendants make whole the Plaintiff by providing compensation for non-pecuniary losses, including but not limited to emotional pain, suffering, humiliation, and mental anguish in amounts to be proven at trial, including an appropriate award of compensatory damages pursuant to R.I.G.L. § 28-50-4, 42-112-2, and 28-5-24;

e.) grant attorney's fees and the costs of this action;

f.) grant punitive or exemplary damages, as appropriate to punish the Defendants for its malicious conduct and/or for its reckless and/or callous indifference to the statutorily protected rights of the Plaintiff, including an appropriate award pursuant to R.I.G.L. § 28-50-4, 42-112-2, and 28-5-1;

g.) grant an appropriate award of prejudgment interest, including an award of interest for all damages awarded to the Plaintiff from the date this cause of action accrued, pursuant to R.I.G.L.§ 9-21-10;

h.) grant such further relief as this court deems necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands trial by jury of all issues pertinent to the causes in this Complaint triable as of right by jury.

Respectfully Submitted,
Amy Dixon
By Her Attorney,

/s/ Stephen T. Fanning
Stephen T. Fanning #3900
305 South Main Street
Providence, RI 02903
401-272-8250
401-272-4520 (FAX)

Before the
STATE OF RHODE ISLAND
COMMISSION FOR HUMAN RIGHTS

RICHR NO. 07 ESE 140-22/25 EEOC NO. 16J-2007-00098

In the matter of

Amy Dixon
Complainant

Against

**NOTICE OF RIGHT TO SUE**

UTRG, Inc., Lincoln Park, Clyde Callicot and Gary Green
Respondents

This NOTICE OF RIGHT TO SUE is issued to the above cited complainant pursuant to Section 28-5-24.1(a) of the General Laws of Rhode Island because more than one hundred and twenty (120) days and less than two (2) years have elapsed since the charge was filed, the Commission is unable to secure a settlement or conciliation agreement, the Commission has not commenced hearings on a complaint and the complainant has requested a Right To Sue. With the issuance of the NOTICE OF RIGHT TO SUE, the Commission is terminating any further processing of this charge.

An information copy of this NOTICE OF RIGHT TO SUE has been sent to the persons indicated on the next page.

This NOTICE OF RIGHT TO SUE is issued at your request. If you intend to sue, YOU MUST DO SO WITHIN NINETY(90) DAYS FROM THE DATE OF THIS NOTICE: OTHERWISE YOUR RIGHT TO SUE IS LOST.

On Behalf of the Commission

4/30/07

Date

Michael D. Évora
Executive Director

*****************************************************************************

NOTICE OF RIGHT TO SUE
PAGE TWO

Section 28-5-24.1 of the General Laws of Rhode Island

(a) A complainant may ask for a right to sue in state court if not less than one hundred and twenty (120) days and not more than two (2) years have elapsed from the date of filing of a charge, if the Commission has been unable to secure a settlement agreement or conciliation agreement and if the Commission has not commenced hearing on a complaint. The Commission shall grant the right to sue within thirty (30) days after receipt of such request. This shall terminate all proceedings by the Commission and shall give to the complainant the right to commence suit in the superior court within any county as provided in Section 28-5-24 within ninety (90) days after the granting of such request. Any party may claim a trial by jury.

CC: George Papanier, President
Gary Green
Clyde Callicot
CT Corporation System
Stephen T. Fanning, Esq.
Michael D. Chittick, Esq.

EEOC Form 161-B (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Amy Dixon**
**33 Homeland Street**
**Johnston, RI 02919**

From: **Boston Area Office**
**John F. Kennedy Fed Bldg**
**Government Ctr, Room 475**
**Boston, MA 02203**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16J-2007-00098** | **Anne R. Giantonio, Intake Supervisor** | **(617) 565-3189** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

APR 17 200

Enclosures(s)

**Robert L. Sanders,**
**Area Office Director**

*(Date Mailed)*

cc: **UTGR, INC./LINCOLN PARK**
**1600 Louisquisset Pike**
**Lincoln, RI 02865**

Stephen T. Fanning
The Law Office of Stephen Thomas Fanning
305 South Main Street
Providence, Rhode Island 02903

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISS ON**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Charge Number: 16J-2007-00098C

## CERTIFICATE

Pursuant to 1601.28 (a) (2) of the Equal Employment Opportunity Commissior 's Regulations, this is to certify that it is probable that the Commission will be unable to compl ete its administrative processing of the above referenced charge, due to pending work oad within 180 days from the filing of the charge.

APR 17 200

Date

Robert L. Sanders
Director