**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**AMY DIXON**
Plaintiff

v. C.A. NO. 07-254 S

**UTGR, INC. d/b/a TWIN RIVER formerly known as LINCOLN PARK; CLYDE CALLICOT; & GARY GREEN**

Defendants

# STATEMENT FOR RULE 16 CONFERENCE

## I. INTRODUCTORY STATEMENT/NATURE OF THE ACTION

This action was commenced by **AMY DIXON** (hereinafter "Plaintiff" or "DIXON") against **UTGR, INC. d/b/a TWIN RIVER formerly known as LINCOLN PARK; CLYDE CALLICOT; AND GARY GREEN**, (hereinafter "Defendants" or "Employer") in order to remedy and seek relief for alleged sexual harassment and discrimination based on gender, and retaliation in regard to terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.; the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws 28-5-1 et seq. ("RIFEPA"), and the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws 42-112-1 et seq. ("RICRA"), including certain common law claims.

## II. FACTS

The Plaintiff, Amy Dixon ("Dixon" or "Plaintiff"), is a female. The Defendant, UTGR, Inc. d//b/a Twin River formerly known as Lincoln Park ("Defendant" or "the

Employer"), is a domestic corporation with an executive office in Lincoln, Rhode Island, and is in the operation of the track-based gaming business, video lottery terminals, entertainment, food and beverage. Defendant Clyde Callicot is/was an employee of the above-referenced Defendants, in the position of Vice President of Marketing and the Defendant Gary Green is an individual and an employee of the above-referenced Defendants, in the position of Vice President of Human Resources. Defendants UTGR, Inc. d/b/a Twin River formerly known as Lincoln Park own, operate, and maintain a principal place of business at 100 Twin River Road, Lincoln, Rhode Island.

Dixon began her tenure of employment with the Defendants on or about August 2, 1997. Dixon worked for the Defendants, under the supervision of Defendants Green and Callicot. At all times, Dixon performed her duties in a satisfactory manner, meeting or exceeding the Employer's legitimate expectations. By 2006, Dixon had risen to the position of Director of Events. On or about February 28, 2006, Dixon was demoted to the position of Catering Administrative Assistant, essentially a secretarial position, losing her previous department, duties, staff, and other indicia of a management position. This decision was initiated by Defendant Callicot and executed by Defendant Green. Upon information and belief, the position of the Director of Events had been merged into the promotions department and Dixon's duties are now being performed by her former male assistant, under the title Assistant Director of Events. Dixon's former assistant currently reports to the male who now holds the position of Director of Promotions and Events, also one of Dixon's former assistants. Neither of the aforementioned males referenced have Dixon's skill, level of experience or years of service to the company, and, in fact, were hired by Dixon. When Dixon asked why she was not permitted to "bid" or stay in

either of these positions, the Employers' general manager simply said that he did not know and provided Dixon with no explanation.

Prior to Dixon's demotion, she complained on numerous occasions about what she reasonably viewed as a work environment, abusive and hostile towards women, and conduct of a sexually hostile nature which permeated the workplace. For example, and not by way of a complete list, the following conduct occurred:

1. Plaintiff was told by Defendant Callicot that she was negative and that he would "blow [her] ass out of the water.";

2. Defendant Callicot questioned Plaintiff's attitude and emotional state when she returned to work following thyroid surgery and said that he understood because he [had] a pregnant wife at home.";

3. Defendant Callicot threatened to have Plaintiff "reevaluated" when she tried to talk to him about employee work concerns;

4. Defendant Callicot told Plaintiff "not to think," and stated to other female employees that if the work environment was difficult, there could be "no tears…because [he] knew how [women] could be.";

5. Defendant Callicot stated to the former Director of Marketing, "things will be much better when I get my number two guy in place," to which she responded "You mean number two person?", and he stated "Whatever."

6. Certain male personnel, including but not limited to Defendant Gary Green, repeatedly accessed a web site, while at work, on which Plaintiff appeared as a model;

7. Plaintiff was informed by the Employer that she would be required to travel out of state, overnight, with Defendant Callicot. Plaintiff objected because she had been

informed that Defendant Callicot had previously commented to Plaintiff's General Manager that Plaintiff "had a tight little body.";

8. Plaintiff was referred to by certain company authority as "one of the hot girls.";

9. Plaintiff was called into the on-site counseling office, with other management personnel present, and asked to play a game. Plaintiff was told this was a "Howard Stern game," at which point Plaintiff was asked a series of questions---"…who would you kill…who would you date…who would you fuck.";

10. Immediately after Plaintiff complained about certain working conditions, Defendant Callicot stated to the Director of Human Resources that and the Employer's General Manager that he "wished [Plaintiff] was a guy so [he] could take [Plaintiff] outside and beat the shit out of [her] once and for all." Defendant Callicot also stated "if that fucking whore thinks she can bring me down she's got another thing coming.";

11. Plaintiff was informed by the Director of Human Resources that Defendant Gary Green and the Director of Gaming, also a male, called Plaintiff a "crazy bitch" to a company representative;

12. On other occasions comments were made by certain management personnel that they had no use for women managers and other demeaning comments.

This misconduct was well known to company authorities and supervisors including but not limited to Defendant Callicot and Defendant Green. Plaintiff followed all appropriate steps, as she understood company policy, in reporting misconduct, but no remedial action

was ever taken. Plaintiff alleges that such misconduct occurred on a repeated and consistent basis and that she consistently objected to such misconduct and made it clear that she did not welcome or condone such behavior. Plaintiff also avers that she found such conduct offensive, did not participate in misconduct, did not invite it, and was deeply offended by it.

On September 6, 2006, in light of the retaliation and mistreatment to which Plaintiff was subjected, which no reasonable person could have been expected to continue to endure, Plaintiff was compelled to take a medical leave of absence. Plaintiff was terminated on December 11, 2006.

## III. PERTINENT LAW

This case will be argued pursuant to the basic elements established in U.S. Supreme Court decisions analyzing sexual harassment and retaliation in the workplace and pertinent EEOC guidelines. *See* **Meritor Savings Bank v. Vinson**, 477 U.S. 57, 106 S. Ct 2399 (1986); **Burlington Industries v. Ellerth**, 524 U.S. 742, 118 S. Ct. 2257 (1998); **Faragher v. City of Boca Raton**, 524 U.S. 775 (1998); **EEOC Notice** #915.002 et seq. (June 18,1999). With respect to Plaintiff's state and federal claims the basic analysis will be the same. *See for example*, **Ward v. City of Pawtucket Police Department** 639 A2d 379 (RI 1994). Plaintiff contends that there clearly exists a dispute relative to the pertinent and material facts relevant to the issue of whether or not the Defendant had a legitimate and nondiscriminatory reason for its treatment of the Plaintiff. Applicable in this case is the burden-shifting analysis first established by the Supreme Court in **McDonnell Douglas Corp. v. Green**, 411 US 792 (1973). See also **Feliciano**

**de la Cruz v. El Conquistador Resort & Country Club**, 218, F.3d 1,6 (1st Cir. 2000). Under that analysis, Plaintiff can clearly make a *prima facie* showing of discrimination based on the evidence that she suffered an adverse job action, by being terminated; that she was qualified for her position, pending clearance by her physician, but was either replaced, or her duties were disseminated or given to a male employee who did not have her experience or qualifications.

Once Plaintiff has established her *prima facie* case, an inference of discrimination arises. See **Hodges v. General Dynamics, Corp.**, 144 F.3d 151, 165-66 (1st Cir. 1998) The Defendant must then offer a nondiscriminatory reason for the employment action in question. See **Bishop v. Bell Atlantic Corp.**, 229 F.3d 53, 58 (1st Cir. 2002) In the instant case, the Defendants contend that Plaintiff was terminated for legitimate reasons. Having proffered an alleged nondiscriminatory reason for Plaintiff's discharge, the Plaintiff must then prove sufficient facts to support a finding that the adverse employment action was the result of discriminatory animus. See **Feliciano de la Cruz**, supra, 218 F.3d at 6.

Evidence that the employer's stated reasons are pretextual can be sufficient for a jury to infer discriminatory animus. See **Gonzalez v. El Dia, Inc.**, 304 F.3d 63, 69 (1st Cir. 2002) Pretext can be proven in several different ways. See **Santiago-Ramos v. Centennial P.R. Wireless Corp.**, 217 F.3d 46, 55 (1st Cir. 2000). In the instant case, there is significant disputed factual evidence to the effect that Plaintiff was subject to disparate treatment.

Plaintiff will also demonstrate pretext by showing that the employer's profferred explanation for its decision to terminate Plaintiff is unworthy of credence. **Reeves v.**

**Sanderson Plumbing Prods., Inc.**, 530 U.S. 133, 143 (2000) This fact alone gives rise to a sufficiently material factual dispute warranting resolution at trial of the issue of the employer's true motivation in terminating Plaintiff. There is no mechanical formula for finding pretext. **Feliciano de la Cruz, supra,** 218 F.3d at 6. It is the type of inquiry where "everything depends on the individual facts." **Thomas v. Eastman Kodak Co.**, 183 F3d 38, 57 (1st Cir. 1999) In the instant case, virtually every material fact pertinent to the employer's decision to terminate the Plaintiff is disputed. Thus, in determining pretext, federal courts in this circuit have been particularly cautious about taking such questions out of the hands of the jury. The court has consistently held that determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury, in that proof is generally based on inferences that must be drawn, rather than on the proverbial "smoking gun." **Hodgens v. General Dynamics, Inc., Corp.**, 144 F3d 151, 167 (1st Cir. 1998); see also **Petitti v. New England Tel. &n Tel. Co.**, 909 F.2d 28, 34 (1st Cir. 1990). Notably, if the Court determines that there are sufficient facts which may permit a jury to find direct evidence of discrimination, as indicated above, the McDonnell Douglas test is inapplicable. See **Trans World Airlines, Inc. v. Thurston**, 469 US 111 (1985); See **Teamsters v. United States**, 431 US 324,358, n. 44 (1977); See also **Loeb v. Textron, Inc.**, 600 F.2d 1003, 1014 (1st Cir. 1979)

## IV. TRIAL ISSUES:

No unusual trial issues are anticipated. This case presents a straightforward example of hostile environment sexual harassment, and retaliation.

V. PROCEEDINGS TO DATE:

The Plaintiff filed a verified Complaint on July 3, 2007, naming certain Parties. The Plaintiff subsequently filed an Amended Complaint, essentially dropping BLB Management Services, Inc. as a Defendant, solely on the basis on Defendant attorney's assertion that BLB had no involvement in, nor control over, the material incidents in this matter. Subsequent discovery has elicited facts that have caused Plaintiff to reexamine this issue, and Plaintiff is considering filing an additional amended complaint, renaming BLB as a Defendant. The Parties have exchanged Rule 26 Initial Disclosures. On December 17, 2007, the Plaintiff conducted the deposition of the Defendant's former Human Resources Director. The Defendant served Request for Production on the Plaintiff on January 10, 2008, and the Plaintiff is currently compiling her responses. Relative to settlement, the Plaintiff made an offer of settlement to the Defendants on October 4, 2007, but has not received a response from the Defendants to date. Towards that end, the Plaintiff is open to participating in the Court's alternative dispute resolution program.

Respectfully Submitted,
Amy Dixon
By Her Attorney
Stephen T. Fanning
/s/ Stephen T. Fanning

Stephen T. Fanning (#3900)
305 South Main Street
401-272-8250
401-272-4520 fax

**Certification**

I hereby certify that a true and correct copy of the above was served on counsel for the Defendant by electronic & Regular Mail to, Michael D. Chittick, Esq., BLB Management Services, Inc. 100 Twin River Rd. Lincoln, RI 02865, mchittick@blbincorporated.com on this 1st day of February, 2008.

/s/ Stephen T. Fanning